TRAUT–DITMAR CONST. CO. v. HARTMAN et al.

(Supreme Court, Special Term, New York County.   November 17, 1908.)

1. CONTRACTS (§ 316*)—PERFORMANCE—DELAY—WAIVER.
   Where a contractor agreed to complete work within a certain time, the other party might protest against the delay and still claim damages for breach of agreement to complete the work within that time.
   [Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1382; Dec. Dig. § 316.*]

2. DAMAGES (§ 77*)—LIQUIDATED DAMAGES AND PENALTIES—CONSTRUCTION— INTENT OF PARTIES.
   The test of enforceability of a provision for payment of a certain amount, described either as penalty or liquidated damages, is the intent of the parties, ascertainable from the instrument itself and all the evidence before the court bearing upon the fairness of the stipulation.
   [Ed. Note.—For other cases, see Damages, Cent. Dig. § 156; Dec. Dig. § 77.*]

3. DAMAGES (§ 80*)—LIQUIDATED DAMAGES AND PENALTIES—CONSTRUCTION— PROPORTION OF AMOUNT TO ACTUAL DAMAGE.
   The amount stipulated in a contract as liquidated damages must not, either upon the face of the contract or from all the circumstances, be disproportionate to the probable actual loss sustained by the party seeking to enforce the provision.
   [Ed. Note.—For other cases, see Damages, Cent. Dig. § 170; Dec. Dig. § 80.*]

4. DAMAGES (§ 85*)—LIQUIDATED DAMAGES AND PENALTIES—EFFECT OF STIPU- LATIONS—BREACH.
   If the owner allows a contractor to complete the work after the time limited, or the delay in completion is caused by the owner, or by extra work required by him, without the contractor's fault, he cannot recover from the contractor an amount stipulated as damages for failure to complete the work within the time.
   [Ed. Note.—For other cases, see Damages, Cent. Dig. § 187; Dec. Dig. § 85.*]

5. DAMAGES (§ 79*)—LIQUIDATED DAMAGES AND PENALTIES—CERTAINTY AS TO AMOUNT OF DAMAGES.
   To ascertain whether a stipulation for liquidated damages is proportionate to the actual damage sustained, there must be some evidence of damage; and, if there is no evidence dehors the contract as to the actual damage sustained, the penalty or forfeiture, no matter how it may be described, will not be allowed.
   [Ed. Note.—For other cases, see Damages, Cent. Dig. § 164; Dec. Dig. § 79.*]

Action by the Traut-Ditmar Construction Company against Herman Hartman and another.   Judgment for plaintiff.

Farley & Rumsey, for plaintiff.
John R. Halsey, for defendants.

DAYTON, J.   The action is to foreclose a mechanic's lien.   On July 10, 1906, the plaintiff contracted in writing with Hartman & Horgan to excavate and remove the materials (including sewer trench) on certain lots at the southeast corner of 162d street and Ogden avenue, according to grades to be given by the engineer, at the following

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

prices: Earth, 55 cents per cubic yard; rock in general excavation, $1.74 per cubic yard; rock in trenches, $2.50 per cubic yard; classification of earth and rock to be governed by city classifications; payments every two weeks upon engineer's certificates; 20 per cent. to be retained until completion; final payments to be made in such sums and upon such certificates as to include the retained percentage; said property to be cleared of all surplus material in eight weeks, under a penalty of $5 per day, to be paid as liquidated damages, for each and every day consumed in excess of eight weeks; such stone as might be needed for the building of foundation walls, in quality and quantity, to be determined by the engineer, to be excepted from the contract. An engineer, being employed by the defendants, delivered to the plaintiff a blue-print sketch showing the grades and lines of the said excavation; and plaintiff agreed to pay one-half of said engineer's charges. The cost of the work performed aggregated $6,810.80, and it is not claimed that it was even substantially completed until November 12, 1906, or more than nine weeks after the time specified in the contract. Four payments were made between July 28 and September 14, 1906, on certificates of the engineer, aggregating $3,511.60, and two payments between September 29 and October 12, 1906, without such certificates, aggregating $1,841, a total of $5,352.80. About January 9, 1907, plaintiff filed a lien for $1,783.92. The amount now demanded is $1,458.20.

The principal contention of the defendants is their right to "demurrage" for 212 working days between September 6, 1906 (the date of the expiration of the 8 weeks), and May 17, 1907, when the last work was performed upon the contract. Although the defendants might protest against delay and still claim damages for the plaintiff's breach of the contract in that regard, yet their payment as late as October 12, 1906, without a certificate, may well be urged in corroboration of plaintiff's testimony excusing the delay. Further than this, it appears that, after a conference between the parties with a view of adjusting their differences, the plaintiff, about May 17, 1907, went upon the premises and performed certain minor work.

But, aside from the merits, the question of enforcing a clause in such a contract which provides for the payment of a certain sum or sums described therein as "a penalty to be paid as liquidated damages" is one of frequent presentation, upon which much has been written in text-books, law dictionaries, and judicial decisions. From an examination of the authorities I reach the conclusion that, without regard to the language of the contract, which may describe the amount agreed upon as either "penalty" or "liquidated damages," or, like the present case, as a "penalty to be paid [or agreed upon, or regarded] as liquidated damages," the test of the enforceability of such a provision is the actual intent of the parties, which may be ascertained from the instrument itself and all the evidence before the court with particular reference to the fundamental fairness of this clause of the contract. The amount agreed upon should not, either upon the face of the contract or from all the circumstances, appear disproportionate to the provable or probable actual loss sustained by the party who seeks to enforce this clause.

To ascertain whether or not the amounts claimed as such liqui-dated damages are disproportionate, some evidence is necessary. If no evidence be offered on this subject, how is the court in position to fix the sum? It follows that, if there be no evidence dehors the con-tract, the penalty or forfeiture, no matter how it may be described, will not be allowed. In other words, proof must be furnished upon which to base approximate actual damage. If the owner allows the con-tractor to complete after the time limit, or if delay be caused by the owner or by extra work, may he stand by and at the end recover ar-bitrary damages, to offset work performed and material furnished, without showing that he has been injured, or how, or to what extent? I know of no modern authority so holding.

In the case at bar no evidence of damage for delay was submitted, and the penalty of $5 per day for 212 working days from September 6, 1906, to May 17, 1907, or $1,060, is disallowed. The contract, as has been shown above, provided for the removal of the material, ex-cept such stone as might be desired for the building of foundations, quality and quantity to be determined by the engineer. Defendants claim that plaintiff left too much stone on the premises. Considerable testimony was taken on this subject, from all of which I conclude that the quantity and quality of stone not removed was authorized by defendants to be left on the premises. Defendants further claim that they were put to expense in removing rubbish or surplus ma-terials. While the evidence is not definite, it seems to me that an al-lowance to the defendants of $100 on this claim would be equitable. Defendants also claim that plaintiff did not complete the excavation to grade. This is strongly negatived by the testimony of Mr. Sterling, an engineer, and also by the fact that in May, 1907, the plaintiff fur-nished labor for removing some "high points" in the excavation.

Plaintiff should have judgment for $1,458.20, less. $100, allowed as above, $30, one-half engineer's charges, and $45 expense of completing excavation of yard, leaving a balance of $1,283.20, with costs, but without interest. Settle findings and judgment on notice.